UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS  DIVISION

MICHAEL PALMER                                      CIVIL ACTION NO. 06-0838

VERSUS                                              JUDGE MELANÇON

WARDEN BURL CAIN                                    MAGISTRATE JUDGE METHVIN

<u>REPORT AND RECOMMENDATION</u>

Before the Court is a petition for writ of *habeas corpus* filed on May 18, 2006, by *pro se*

petitioner, Michael Palmer,  pursuant to 28 U.S.C. §2254.  Respondent, through the District

Attorney for the Twenty-Seventh Judicial District of Louisiana for St. Landry Parish, filed an

answer and a memorandum in opposition to the petition.[1]  For the following reasons, it is

recommended that petitioner's *habeas* claims be **DENIED AND DISMISSED WITH**

**PREJUDICE.**

### *Factual and Procedural History*

Petitioner is serving a 45-year sentence for armed robbery, attempted carjacking and

attempted armed robbery imposed January 11, 2002, in the 27th Judicial District Court, St. Landry

Parish, Louisiana.  The facts of this case were summarized by the Louisiana Third Circuit Court

of Appeals as follows:

> The convictions arise out of two incidents involving Pizza Hut delivery drivers.
> On November 15, 2001, Pizza Hut Delivery in Opelousas received a call in order
> for a pizza to be delivered.  The pizza was delivered by Christina Vidrine, who
> was nine months pregnant at the time.  When she exited the car with the pizza,
> one of the two men ran from behind a house and struck her with a crutch
> knocking her onto her back.  The assailant sat on her stomach and demanded the
> car keys.  When it was determined that they could not steal the car because

---

[1]Rec. Doc. 10.

2

neither could drive a manual shift, one of the assailants demanded the victim's money and threatened to kill her unless she gave it to them.  After finding the money in a bank bag, the two fled.

Two days later, two men again called Pizza Hut Delivery and ordered two pizzas to be delivered [using the same fictitious call-back phone number].  This time, when the driver, Clorissa Wigley, arrived with the pizza, she was followed by Opelousas police officers.  Two men approached the car, but backed away quickly and fled the scene.  Palmer and Ned were apprehended a short distance away and were each found to be in possession of $CO_2$ powered B-B pistols.

Both Palmer and Ned confessed to at least some degree of participation in the two incidents.   Palmer was convicted of one count of armed robbery, one count of attempted car jacking, and one count of attempted armed robbery.  As a result, he was sentenced to forty-five years at hard labor, without benefit of parole, for the armed robbery conviction and five years at hard labor on the conviction for attempted car jacking, without benefit of parole, to be served concurrently with the forty-five-year sentence.  Palmer was also sentenced to fifteen years at hard labor on the conviction for attempted armed robbery, without benefit of parole, to be served concurrently with the first two sentences.[2]

### *Direct Appeal*

Petitioner appealed his conviction and sentence to the Third Circuit Court of Appeals raising claims of sufficiency of the evidence and excessiveness of sentence.  On October 2, 2002, petitioner's conviction and sentence were affirmed in an unpublished opinion of the Third Circuit.  <u>State of Louisiana v. Michael Palmer</u>, 2002-00431 (La. App. 3 Cir. 10/2/2002), 829 So.2d 670 (Table).  Petitioner did not seek further direct review in the Louisiana Supreme Court.

### *Application for Post-Conviction Relief*

On October 1, 2002, petitioner filed an application for post conviction relief in the trial court, however, the application was not signed, so it was returned to petitioner, who re-filed it

---

[2] Exhibit to Rec. Doc. 10 at pps. 89-90.

3

with the appropriate signature on October 7, 2002.[3]  Petitioner raised the following claims for relief:

1.    Petitioner was denied due process and equal protection of the law in violation of the Fourteenth Amendment because the State presented perjured testimony and/or false and/or fabricated evidence to obtain the conviction;

2.    The trial court erred when it allowed testimony of voice identification, and in allowing in-court identification on purely speculative size and build;

3.    Petitioner was denied due process and a fair trial where other crimes evidence was admitted in violation of the state and federal constitutional rights; and

4.    Petitioner was denied effective assistance of counsel in violation of the Sixth Amendment.[4]

The trial court denied petitioner's application on March 22, 2004.[5]  The trial court refused to consider Claims 1 and 2 because petitioner did not raise the issues at trial or on appeal.   The court denied Claim 3 on the merits, finding that the statements of the prosecutor were not "other crimes" evidence, and if they were, the statements were "... related and intertwined with the charged offense..." and thus permissible.[6]  Likewise, the court denied relief on petitioner's ineffective assistance of counsel claim, citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because petitioner failed to demonstrate either deficient performance or prejudice.

_____

[3] Id. at p. 241.

[4] Id.

[5] Id. at pps. 236-239.

[6] Id. at p. 238.

4

The Louisiana Third Circuit Court of Appeals granted in part and denied in part petitioner's writ application, holding that it was error for the trial court to refuse a merits review of all the claims:

> Louisiana Code of Criminal Procedure art. 930.4 does not apply to first-time post-conviction relief applications. [citation omitted] ... Thus, the trial court's failure to consider the merits of all issues before it was error.
>
> We find no error in the trial court's ruling on the issues that it did consider on the merits. The State's comment concerning two possible outcomes of Relator's actions toward the pregnant victim does not constitute 'other crimes evidence' within the meaning of La. Code Evid. art. 404(B). Furthermore, Relator failed to prove that he was denied effective assistance of counsel.
>
> Accordingly, the ruling of the trial court insofar as it procedurally barred Relator's claims under La. Code Crim. P. 930.4 is hereby reversed, vacated, and set aside. The matter is remanded for consideration on the merits of the following issues: (1) the possibility that the State presented perjured testimony and fabricated evidence; (2) the admissibility of a witness's identification based on voice, size, and build; and, (3) whether State-elicited testimony concerning a similar robbery was precluded from admission into evidence as other crimes evidence. Relator's writ application is denied as to the remaining claims.[7]

On January 14, 2005, the trial court conducted an evidentiary hearing on the claims as directed by the Third Circuit.[8]  The following witnesses testified at the hearing: investigating officer Donald Thompson, a detective with the Opelousas Police Department; former Assistant District Attorney Gary Tromblay, (the prosecutor in both cases); and petitioner's accomplice, Jason Ned, who had plead guilty and testified at Palmer's trial.

---

[7] Id. at pps. 345-346.  Petitioner sought review of his ineffective assistance of counsel claim which was denied by the Third Circuit.  On May 6, 2005, the Louisiana Supreme Court denied his writ application.  State ex rel. Michael Palmer v. State of Louisiana, 2004-1822 (La. 5/6/2005), 901 So.2d 1087.

[8] Rec. Doc. 13.

5

The court also received into evidence the transcript of Ned's plea colloquy, a copy of

Ned's recanting affidavit,[9] and letters dated September 16 and October 25, 2004 from Ned to the

trial judge. At the conclusion of the hearing the court denied the application for relief,

specifically finding that Ned's testimony, which attempted to absolve Palmer of some of the

criminal acts, and which was directly contrary to his trial testimony, was not credible:

> ... the Court finds that there is no error that was committed, there is no factual
> basis, no legal basis for the defendant's position and for the Third Circuit Court of
> Appeal's concern relative to the admission into evidence of the Domino Pizza
> information. Likewise, the Court's position at this time is the same with regards
> to the testimony of the victim in this case... The last relates to the issue as to the
> state presenting perjured testimony and fabricated evidence. I have tried to think
> of appropriate terminology in terms of addressing today's testimony of Mr. Ned,
> and the only words that come to my mind is that he is nothing short of being a
> pathological liar. ... [Ned} lied today... The defendant's motions, as relates to that
> matter, are denied.[10]

On May 17, 2005 petitioner filed his writ application in the Third Circuit Court of

Appeals.[11]  On June 24, 2005, the Third Circuit denied writ, finding that there was  "no error in

the trial court's ruling."

Petitioner submitted an Application for Writ of Certiorari and/or Review to the Louisiana

Supreme Court regarding Claims 1-3, which were the claims addressed during the evidentiary

---

[9] See Rec. Doc. 1-5, Exhibit I. The affidavit is dated April 12, 2004 and states, "Almost two months after I was sentenced I was call on to make my testimony at Michael's trial (which I was unaware was part of my plea agreement). Since they probably knew I would refuse, they brought me back to Opelousas Parish Jail nearly two weeks early, giving themselves an adequate amount of time to 'persuade' me. While there, I was beaten twice for my refusal to cooperate – the first day I was there and the day before Michael's court date. Also, various times I was taken across the street to see the D.A. (Gary Tromblay). He tryed [sic] to talk me into testifying by pointing our certain things in my sentencing transcripts and telling if I said it for him a certain way, it wouldn't be a lie. On the last visit, he attempted to rehearse my testimony, but when I again refused he told me flat out, 'If you don't lie I'll make sure you get re-sentenced to 99 years.' After that I was returned to my cell and beat up until I agreed to do what they said."

[10] Exhibit to Rec. Doc. 10 at pps. 466-470.

[11] Id. at p. 228.  Petitioner had apparently been granted an extension to file the writ.

6

hearing.   (Claim 4,  ineffective assistance of counsel, had already been addressed by the

Supreme Court in a previous ruling). On May 5, 2006, the Supreme Court, citing La. C.Cr.P. art.

930.8 and State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189, denied writs.

State of Louisiana ex rel. Michael Palmer v. State of Louisiana, 2005-2116 (La. 5/5/2006), 927

So.2d 303.[12]

### Issues Presented

Petitioner challenges his conviction and sentence on the following grounds, all of which

were presented to the Louisiana Supreme Court, and are therefore exhausted:

1.      the prosecution presented perjured testimony and/or fabricated evidence;

2.      the trial court allowed testimony of voice identification and otherwise permitted a
        speculative in-court identification;

3.      the trial court allowed the introduction of other crimes evidence; and

4.      petitioner was denied the effective assistance of counsel.

### Findings and Conclusions

I.      **Procedural Default**

Respondent contends that Claims 1-3 are procedurally defaulted.  However, a review of

the record shows that the application of a state procedural default rule by the Louisiana Supreme

Court was in error.

As discussed above, the Louisiana Supreme Court denied petitioner's writ regarding

Claims 1-3 on procedural grounds, citing La. C.Cr.P. art. 930.8 and State ex rel. Glover v. State,

93-2330 (La. 9/5/95), 660 So.2d 1189.

---

[12] Id. at p. 233.

7

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule.  Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991).  "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Id. at 750-51.  This doctrine ensures that federal courts give proper respect to state procedural rules.  Id.

When a state procedural rule prevents a state court from reaching the merits of a federal claim, that claim ordinarily cannot be reviewed in federal court.  Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590, 112 L.Ed.2d 394 (1991).  If the last state court to reach the issue looks to its merits, then the federal courts should also review the issue on its merits.  On the other hand, if the last state court to review the claim clearly and expressly states that its judgment rests on a state procedural bar, federal *habeas* review is barred.  Id. at 2594; Harris v. Reed, 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989) (noting that a state court ruling that expressly relies on a procedural bar precludes federal review even if the state court alternatively rules on the merits).  *See also* Pickney v. Cain, 2003 WL 21517367 (5th Cir. 2003) (procedural default doctrine applied even though state appellate court addressed the merits because "the last court to address his claim, the Louisiana Supreme Court, denied the application on procedural grounds.")

8

Here, the Louisiana Supreme Court denied petitioner's writ application relying on Art. 930.8 regarding time limitations and did not consider the merits of petitioner's claim. Accordingly, Claims 1-3 are procedurally defaulted unless an exception applies.

### *Independent and Adequate Ground*

The procedural default doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. Sones v. Hargett, 61 F.3d 410, 416 (5th Cir.1996).  However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed.  Moore v. Roberts, 83 F.3d 699 (5th Cir.1996).  In such a case, the doctrine is not applicable.

### **Independence**

The independence requirement is fulfilled when the last state court rendering a judgment "clearly and expressly" indicates that its judgment rests on a state procedural bar.  Amos v. Scott, 61 F.3d 333, 338 (5th Cir.1995).  In denying petitioner's writ application, the Louisiana Supreme Court clearly and expressly indicated that its ruling was premised on the untimeliness of the claim under La.Code Crim.Proc. art. 930.8.  Thus, the court's holding is sufficient to fulfill the independence requirement.

9

**Adequacy**

An adequate state procedural rule is one that is strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902 *citing* Amos, 61 F.3d at 339).  A federal habeas court is not charged with correcting errors made by state courts in applying state law, but rather focuses on due process and whether the errors of the state court make the underlying proceeding fundamentally unfair.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir.1998) *quoting* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Accordingly, when state courts apply a procedural bar that has no foundation in the record or basis in state law and it is deemed unfair, the federal courts do not recognize the bar.  Singleton v. Cain, 2006 WL 3589743 (E.D.La. December 7, 2006); Davis v. Johnson, 2001 WL 611164 at *4 n. 10 (N.D.Tex. May 30, 2001); *see also*, Johnson v. Lensing, 1999 WL 562728 at *4 (E.D.La. July 28, 1999) (Art. 930.8 bar was not adequate because it was not improperly applied); Poree v. Cain, 1999 WL 518843 (E.D.La. July 20, 1999)(Art. 930.8 was not adequate to bar review because it was incorrectly applied).

Louisiana Code of Criminal Procedure Article 930.8  provides a two-year limitations period for the filing of applications for post-conviction relief, with the period beginning with the date of finality of judgment.  In Glover, the Supreme Court held that an appellate court reviewing the judgment of trial court on an untimely application for post-conviction relief is not precluded from denying relief on basis of Art. 930.8 even though the lower court addressed the merits of the case. State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d at 1201-02.

10

Petitioner's conviction was affirmed by the Third Circuit on October 2, 2002.  Thus, petitioner had until October 2, 2004 to file for post conviction relief.  Petitioner filed an unsigned application on October 1, 2003 and a signed one on October 9, 2003.  It is clear, therefore, that Art. 930.8 was misapplied in this case.  Because petitioner timely filed (by a full year) the application, relying on the state procedural bar to preclude federal habeas review would be unfair.  Accordingly, the undersigned concludes that in this case, the application of Art. 930.8 was not adequate to support the state court's judgment, and therefore, the procedural bar will not be imposed, and the undersigned will review the merits of petitioner's claims.

### *Standard of Review*

Because petitioner filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas review is governed by AEDPA.

Under AEDPA, habeas relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § §2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under §2254(d)(1), and questions of fact are reviewed under §2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).

11

A state court decision is contrary to federal law within the meaning of §2254(d)(1) if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Under §2254(d)(2), a state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08.  The inquiry into unreasonableness is objective.  Id. at 409-10. A state court's incorrect application of clearly established Supreme Court precedent is not enough to warrant federal habeas relief – the application must also be unreasonable.  Id. at 410-12.

The state court's factual findings are presumed to be correct.  28 U.S.C. §2254(e)(1).  In order to obtain habeas relief on the §2254(d)(2) ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the §2254(e)(1) presumption that the state court's factual findings are correct.  *See* Dowthitt v. Johnson, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a

misapplication of clearly established federal law." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002).

Upon review of the record and the law, the undersigned concludes that the record is sufficient, no evidentiary hearing is required, and petitioner is not entitled to relief.[13]

**Claim 1:** **_Perjured testimony and/or fabricated evidence_**

Petitioner argues that he was denied due process and equal protection of the law in violation of the Fourteenth Amendment because the State presented perjured testimony and/or false and/or fabricated evidence to obtain the conviction.

The Due Process Clause of the Fourteenth Amendment prohibits a state from knowingly using perjured testimony.  Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  "In order to prove that the State has violated the Fourteenth Amendment by relying on such testimony, the defendant must demonstrate: (1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false."  Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000) *citing* Giglio, at 153-54. "Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports or in statements do not establish perjury." Bell v. Dretke, 2006 WL 770442, *6  (N.D.Tex. 2006), *citing* Koch v Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (inconsistencies in a witness's testimony are to be resolved by the trier of fact and do not

---

[13] Whether to hold an evidentiary hearing is now a statutorily mandated determination under 28 U.S.C. §2254(e)(2).  This subsection provides that the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

13

establish that testimony was perjured); <u>United States v. Martinez-Mercado</u>, 888 F.2d 1484, 1492

(5th Cir.1989) (the omission of certain facts from the reports and written statements of the

prosecution's witnesses is inadequate to put the prosecution on notice of perjury on their part, or

to establish that perjury in fact occurred); <u>United States v. Viera</u>, 819 F.2d 498, 502 (5th

Cir.1987) (inconsistencies between pre-trial and in-trial testimony do not, standing alone,

establish perjury or put the prosecution on notice).

Petitioner contends that Detective Donald Thompson gave inconsistent testimony during

the evidentiary hearing held on petitioner's post conviction relief application.  Petitioner does

not attack Detective Thompson's trial testimony.  Thus, at the time of the alleged perjury,

petitioner was already convicted and sentence.  Accordingly, petitioner cannot show that

Detective Thompson's allegedly perjured testimony at the evidentiary hearing was material to

the jury's verdict because the testimony occurred over two years after petitioner's conviction.

As noted above, at the evidentiary hearing, petitioner's accomplice, Jason Ned, gave

testimony which was substantially and materially different from his trial testimony.

Petitioner contends that Ned's trial testimony was perjured, was material to his conviction, and

that Ned's eventual recantation supports petitioner's alibi defense, i.e., that he was with his

mother and sister at the time of the crime.  Petitioner also argues that Ned perjured himself when

he testified at trial that he had not been threatened by police to obtain the testimony against

petitioner, and when he testified that petitioner had struck the November 15, 2001 victim with a

crutch.

14

At trial, Ned testified that he was with petitioner on the night of November 15, 2001, when petitioner conjured up a plan to steal a car from a pizza delivery person so that petitioner could travel to Lake Charles.[14]  Ned testified that when the victim arrived, petitioner hit her with a crutch and sat on top of her, while demanding the keys to her vehicle.[15]  When Ned and petitioner determined that they could not drive the victim's vehicle, petitioner told the victim to give him her money or he would kill her.[16]

At the evidentiary hearing, Ned testified that he had perjured himself during petitioner's trial and that he and petitioner were not together on November 15, 2001. Ned testified that he had been forced by the prosecutor to testify against petitioner.[17]  Ned further testified that he and petitioner did not commit robbery on November 15, 2001, and in fact they had not even been together on that night.[18]  Upon cross-examination, Ned acknowledged that following his arrest, he gave an inculpatory statement to police.  Ned testified, however, that Detective Thompson hit him and coerced him into giving the statement.[19]

At the evidentiary hearing, Ned was questioned regarding two letters he had sent the trial judge after being sentenced.[20]  In requesting that the court re-sentence him, Ned explained that "one careless mistake" made him lose a promising career in the military and that "the things that

---

[14] Exhibit to Rec. Doc. 10 at p. 763.

[15] Id. at p. 767.

[16] Id. at p. 768.

[17] Rec. Doc. 13-1 at p. 428.

[18] Id. at p. 430.

[19] Id. at p. 439.

[20] Id. at p. 447.

15

took place are definitely not part of my character."[21]  At no time in his correspondence with the

court did Ned contend that he was innocent or wrongly convicted.

At the conclusion of the evidentiary hearing, the trial judge denied petitioner's claim that

the state had used perjured testimony during the trial.  The trial judge stated:

> The last relates to the issue as to the state presenting perjured testimony and
> fabricated evidence.  I have tried to think of appropriate terminology in terms of
> addressing today's testimony of Mr. Ned, and the only words that come to my
> mind is that he is nothing short of being a pathological liar.  I don't think I'd
> believe him today if he told me that today is Friday.  For whatever reason, Mr.
> Ned has seen fit to come to court today.  Personally, I think he feels as though
> he's got nothing to lose, I think though he's got the wheelchair as his crutch, his
> basis for anything and everything.  I think that what happened to Mr. Ned is he
> first of all forgot that he wrote to me.  He probably, second of all, didn't realize
> that by writing to me, that those letters would find their way into the record.
> Since the day I took the bench, one of the things that I have been most, most
> particular about is the Boykinization process...  At the time that Mr. Ned went
> through the Boykinization, there was nothing that raised any red flags in my mind
> with regards to any problems with his pleas.  His letters tell me there was nothing
> wrong with his plea, he just didn't like the sentence, and if I'm not mistaken,
> that's probably the lightest sentence I've granted to anybody for those kind of
> charges, since I've been on the bench.  In any event, when he sent those letters to
> me, "Hey, Judge, do something with regards to my sentence, I'm really sorry, I've
> rehabilitated, and oh, by the way, I'm in a wheelchair now and you know, I know
> I shouldn't have done what I did, but I did it, and it ain't gonna happen again."
> That's what all those letters are telling me, and then today he comes in here and I
> mean it's like – I'm wondering if I'm visiting with the same man that we've been
> dealing with for apparently a little over four years.  He lied today, he lied today,
> he lied today.  The District Attorney can take whatever action they deem
> appropriate with regards to that.  The defendants' motions, as relates to this
> matter, are denied.[22]

Thus, the trial court concluded that Ned's trial testimony was true, while the testimony

given at the evidentiary hearing was false.  Petitioner points to nothing to suggest that these

---

[21] Id. at p. 450.

[22] Id. at pps. 467-470.

16

findings of fact were unreasonable in light of the evidence presented.  *See* 28 U.S.C.A. §

2254(d)(2).  Neither has Petitioner pointed to anything that would clearly and convincingly show

these findings of fact to be incorrect.  *See* 28 U.S.C.A. § 2254(e)(1).  Because Ned's testimony at

the trial was accurate, the prosecution did not knowingly present perjured testimony to the jury

with respect to this issue.  The state habeas court's conclusion of law, therefore, was neither

contrary to nor an unreasonable application of clearly established federal law.  *See* 28 U.S.C.A.

§ 2254(d)(1).

Accordingly, the undersigned concludes that petitioner's claim is without merit.

**Claim 2:**         ***Voice identification and speculative in-court identification***

Petitioner argues that the in-court identification of petitioner by the victim was

inappropriate and denied him due process and a fair trial.  Petitioner takes issue with the

testimony of Christina Vidrine, the victim of the November 15, 2001 crime.  Petitioner argues

that Ms. Vidrine identified him in court by his voice and by his size and build.

A review of the transcript shows that Ms. Vidrine did not make a positive identification

of petitioner.  In fact, she made it clear that she could not say that petitioner was or was not the

perpetrator and that she could not positively identify the perpetrator.[23]  Ms. Vidrine testified that

the perpetrator put his hands over her face and eyes so she could not see his facial features.[24]

---

[23] Exhibit to Rec. Doc. 10 at pps. 729, 735.

[24] Id. at p. 725.

17

Ms. Vidrine's testimony was limited to her recollection that the perpetrator was black, he had on a dark coat, was of slight build like petitioner, and had a sort of deep voice.[25]

Although identification procedures may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny a criminal defendant due process of law, there was no identification made here.  <u>Stovall v. Denno</u>, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).   Ms. Vidrine made it clear that she could not state whether or not petitioner was the perpetrator.

Further, Ms. Vidrine's testimony regarding her recollection of what the perpetrator looked and sounded like was appropriate lay witness testimony.  Louisiana Code of Evidence Art. 701 permits lay witnesses to testify in the form of opinions or inferences, however, such opinions are limited to those rationally based on the perception of the witness and helpful to a clear understanding of the testimony or the determination of a fact in issue, which is precisely what Ms. Vidrine did in this case.  <u>State v. Francis</u>, 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 489.

Accordingly, petitioner has failed to demonstrate that the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or that the decision constitutes an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* §2254.  Thus, it is recommended that petitioner's claim be denied.

**Claim 3:**          **<u>Use of other crimes evidence</u>**

---

[25] <u>Id</u>. at p. 733.

18

Petitioner argues that the trial court erred when it allowed the introduction of other crimes evidence.  In support of this claim, petitioner argues that testimony concerning a similar robbery of a Dominos delivery person was improper.  Likewise, he also argues that the prosecutor's reference in closing argument to the possibility that the pregnant robbery victim's child could have been "born dead" was improper evidence of the crime of child endangerment.

"[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such."  Derden v. McNeel, 978 F.2d 1453 (5th Cir.1992), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), *citing* Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (other citation omitted).  An erroneous state court evidentiary ruling rises to a constitutional level if it renders the petitioner's trial fundamentally unfair. Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir.1997), *citing* Cupit v. Whitley, 28 F.3d 532, 536 (5th Cir.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995).  The Fifth Circuit defines an "unfair trial" as "one that has been 'largely robbed of dignity due a rational process.' " Johnson v. Blackburn, 778 F.2d 1044, 1050 (5th Cir.1985), *quoting* Houston v. Estelle, 569 F.2d 372, 383 (5th Cir.1984).

In federal habeas review, the district court must apply a harmless-error analysis to allegations of trial court error.  Goodwin v. Johnson, 132 F.3d 162, 181 (5th Cir. 1997)*, citing* Brecht v. Abrahamson, 507 U.S. 619, 629, 113 S.Ct. 1710, 1716 123 L.Ed.2d 353 (1993), *quoting* Arizona v. Fulminante, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 1263-64, 113 L.Ed.2d 302 (1991)).  The court must determine whether the error "'had substantial and injurious effect or

19

influence in determining the jury's verdict.'" Brecht, 507 U.S. at 620, 113 S.Ct. at 1712, *quoting*

Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946).

Louisiana law generally prohibits the admission of "other crimes" evidence, that is,

evidence of criminal conduct uncharged in the subject indictment, without notice provided

beforehand.  State v. Prieur, 277 So.2d 126, 128 (La.1973).

In the course of reviewing petitioner's statement given to Detective Thompson, the

following colloquy occurred:

Q.      Now I noticed that in the statement, you asked him about a Domino's robbery.

A.      Yes, sir, I did.

Q.      Why did you ask him about that?

A.      Because we had, uh, not identical robberies like the Pizza Hut . . .

MR. LOPEZ: Your Honor, we're going to object to all of this.  I think this is improper.

THE COURT: What would be th relevance, Mr. Tromblay?

MR. TROMBLAY: Well, I mean he's entitled to explain why he asked him that, so there's no confusion on the issue.  If we could approach.

***

THE COURT: All right.  Mr. Bailiff, would you retire the jury.[26]

After hearing argument of counsel regarding whether the information regarding the

Domino's robbery should be presented to the jury, the trial judge determined that the witness

should finish his explanation, however, the jury should be admonished to disregard it.

Accordingly, the following occurred in the presence of the jury:

---

[26] Id. at 816-817.

20

Q.      Detective Thompson, before the jury left the room, I had asked you, there
        was a reference in your questioning of this defendant, about whether or
        not he had any knowledge of a robbery that occurred at Domino's Pizza
        earlier that week, is that correct?

A.      Yes, sir, it is.

Q.      Now whenever you questioned this defendant, you didn't have any
        evidence that he was involved in this Domino's robbery?

A.      No, sir, I did not.

Q.      And in fact he denied any involvement?

A.      Yes, sir, he did.

Q.      And the matter went no further?

A.      No, sir, it did not.

Q.      I guess it's – you don't know the answer until you ask the question, sort of thing?

A.      That is correct.

Q.      Okay.  Now you have no evidence implicating this defendant in the
        robbery that had occurred at Domino's?

A.      No, sir, I don't.

Q.      I mean it's fair to say, I mean he's been eliminated as a suspect?

A.      Yes, sir, he has been.

***

MR. LOPEZ: Your Honor, we would ask the Court for an admonition to the jury
concerning the ...

THE COURT: Ladies and gentlemen, what happened in the video, there was a
question asked about apparently another episode or something that happened at
Domino's, and that has nothing to do with this case, okay.  And so basically, I just
want you to strike that from your minds.   It does not involve anybody that's
involved in this litigation, and so, so far as you're concerned, it doesn't even
exist.  It's not evidence of anything, okay.

21

MR. TROMBLAY: And I will stipulate, for the record, the State has no reason to believe that this defendant was involved in any robbery that occurred at Domino's that Sunday.[27]

In ruling on petitioner's claim raised in his post conviction relief application concerning the testimony regarding the Domino's robbery being improper other crimes evidence, the trial judge found that "there is no error that was committed, there is no factual basis, no legal basis for the defendant's position."[28]

Considering the facts presented and the applicable law, the undersigned concludes that the trial court did not err in allowing the discussion regarding the Domino's robbery because there was no implication that petitioner had any involvement in the crime and because the judge clearly and unequivocally admonished the jury that the reference to the Domino's episode "has nothing to do with this case."  Thus, there was no testimony that petitioner had committed the other crime, i.e., the Domino's robbery, and even assuming *arguendo* that there was, the judge corrected any such problem by admonishing the jury to disregard the information regarding the Domino's robbery.

Similarly, there was no other crimes evidence regarding the fact that Ms. Vidrine was pregnant and her unborn child was placed at risk during the crime.  In closing argument, the prosecutor stated:

Now, you know what's amazing, is the fact that you got to watch the video tape of him walking into that interview room after he wants you to believe that this police officer beat him to a pulp, and how he was riving in pain!  And I let him tell his little story.   You saw him walk in.  Did that appear to be a man that had just been beaten in the way that he described it?  My goodness, I mean he strolled

---

[27] Id. at pps. 826-828.

[28] Rec. Doc. 13 at p. 466.

in as if he were on an Easter egg hunt!  Did that look like a man that had been
beaten to the point to where he was pummeled in the corner, doubling over?  No.
So then when I confront him with that fact, what does he tell you?  Oh, year, they
told me to, you know, act normal.  Oh, come on!  You know in kindergarten, it's
cute when the kids lie like that to try to get out of trouble, but let me tell you, it's
not cute in this case, because a woman could have been killed and a child could
have been born dead.[29]

The Third Circuit reviewed petitioner's argument that other crimes evidence had been
introduced by the prosecutor's references to the fact that the victim was pregnant and her unborn
child could have been harmed.  The Third Circuit concluded that the prosecutor's comments
regarding petitioner's "actions toward the pregnant victim does not constitute 'other crimes
evidence' within the meaning of La. Code. Evid. art. 404(B)."[30]

Thus, the state court determined that the references to potential harm to the unborn child
did not amount to other crimes evidence.  There is no dispute that the victim was pregnant at the
time of the crime and that the perpetrator hit her with a crutch and sat on her stomach.  Thus, the
statements made in closing argument refer to the potential outcome of the crime and did not
amount to an allegation of other crimes.  Accordingly, the undersigned concludes that the state
court's decision was not contrary to clearly established federal law, nor did the decision
constitute an unreasonable determination of the facts in light of the evidence presented in the
state court proceeding.  *See* §2254.

For the foregoing reasons, it is recommended that petitioner's claim be DENIED.

---

[29] Exhibit to Rec. Doc. 10  at p. 926.

[30] Id. at p. 345.

23

**Claim 4:**        ***Ineffective assistance of counsel***

Petitioner contends that he was denied the effective assistance of counsel due to counsel's: (1) failure to call witnesses to establish petitioner's alibi; (2) failure to file pretrial motions to suppress his inculpatory statements; and (3) argument to the jury the regarding sentencing laws to support impeachment of the co-defendant, Jason Ned.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).  The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  Id. at 688.  The court's scrutiny shall be "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689-90.  *See also* Marler v. Blackburn, 777 F.2d 1007, 1010 (5th Cir. 1985).  A *habeas* court must be careful not to second guess legitimate strategic choices made by defense counsel which under the light of hindsight seem ill-advised and unreasonable.  Sawyer v. Butler, 848 F. 2d 582, 587-88 (5th Cir. 1988).

The Strickland court outlined the extent of prejudice that must be established by the defendant:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf.* United States .v Morrison, 449 U.S. 361, 364-65 (1981).

24

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

Strickland, supra, at pages 691, 694-95; *see also* Taylor v. Maggio, 727 F.2d 341 (5th Cir. 1984);

U.S. v. Diaz, 733 F. 2d 371 (5th Cir. 1984).

Strickland's prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001), *citing* Strickland, 104 S.Ct. at 2068.  However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying Strickland's prejudice element.  Id.

Because both Strickland factors, that of deficient performance and prejudice, must be satisfied, an ineffective assistance contention may be rejected on an insufficient showing of deficient performance or prejudice.  Strickland, supra.

When the effectiveness of counsel is at issue, although the ultimate question of whether counsel's performance was deficient and prejudicial is a mixed question of law and fact, state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of §§ 2254(e)(1). *See* Strickland, 466 U.S. at 698, 104 S.Ct. 2052; Nobles v. Johnson, 127 F.3d 409, 418 (5th Cir.1997), *cert. denied,* 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998)); Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied,* 513 U.S.

960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994); <u>Carter v. Collins</u>, 918 F.2d 1198, 1202 (5th Cir.1990).

 Considering the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that a *habeas* court must be careful not to second guess legitimate strategic choices made by defense counsel, the undersigned concludes that petitioner's trial counsel's performance was not deficient. *See* <u>Strickland</u>, <u>supra</u>; <u>Sawyer v. Butler</u>, 848 F. 2d at 587.  A review of the record shows that counsel was well prepared for this trial, making objections and arguments, and presenting the available defenses.  In doing so, counsel made strategic decisions concerning the case.  Counsel determined the best way to present the alibi defense and in so doing, concluded that the purported alibi witnesses were inadequate to support the defense.  Likewise, counsel attempted to discredit Ned by pointing out that his sentence was significantly less than maximum sentence allowed, and by bringing this to the jury's attention counsel implied to the jury that there was a possibility that Ned was not being truthful but rather simply living up to his end of the bargain.  These strategic decisions by counsel clearly fall in the range of effective professional representation.

 Likewise, counsel's decision to not file a motion to suppress petitioner's inculpatory statements did not amount to ineffective assistance.  A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." <u>United States v. Oakley</u>, 827 F.2d 1023, 1025 (5th Cir.1987).  In order to determine whether a confession is admissible, the court must determine whether it was given voluntarily.  In doing so, the court must look to  what effect the totality of the circumstances had upon the will of the defendant.  <u>Arizona v. Fulminante</u>, 499 U.S. 279, 285, 111 S.Ct. 1246, 113

26

L.Ed.2d 302 (1991).  A voluntary confession cannot result from overreaching in the form of either direct or subtle psychological persuasion.  United States v. Broussard, 80 F.3d 1025, 1034 (5th  Cir. 1996).   In this *habeas* case, petitioner does not argue that his statements were not voluntarily given, or that there was any other basis for counsel to file a motion to suppress or otherwise limit the use of the statements at trial.  Although petitioner testified at trial that he had been beaten and intimidated into confessing to the crimes, the prosecutor attacked this allegation by demonstrating to the jury that the videotaped confession depicted a calm and unscathed individual.  Considering the foregoing, there is no evidence showing that a motion to suppress or limit the use of the statements would have been granted had counsel filed one.  Thus, counsel's performance was not deficient.

Accordingly, the undersigned concludes that petitioner fails to demonstrate that counsel's performance was deficient.  Moreover, petitioner fails to offer any evidence or argument that had counsel performed differently, the result of the case would have been different.  Thus, this claim is without merit.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that petitioner's claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

      **Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

      Signed at Lafayette, Louisiana, on July 21, 2007.

      Mildred E. Methvin
      United States Magistrate Judge
      800 Lafayette St., Suite 3500
      Lafayette, Louisiana 70501
      (337) 593-5140 (phone) 593-5155 (fax)